## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNISON CO., LTD.,

    Plaintiff,

v.

JUHL ENERGY DEVELOPMENT, INC., JUHL
ENERGY, INC., WINONA WIND HOLDINGS,
LLC, WINONA COUNTY WIND, LLC, DANIEL
JUHL, JOHN MITOLA, JOHN BRAND, BARTLY
J. LOETHEN, AUDREY LOETHEN, and JEFF
BENDEL

    Defendants.

Civil File No.:


## COMPLAINT
## JURY TRIAL DEMANDED

For its Complaint against the named Defendants, Plaintiff Unison Co., Ltd. ("Plaintiff") states
and alleges as follows:

### PRELIMINARY STATEMENT

1.    This lawsuit arises out of Defendant Juhl Energy Development, Inc.'s  ("JEDI") purchase
of two Wind Turbine Generators ("WTGs") from Plaintiff.  These WTGs were installed at a community
wind farm project (the "Wind Farm") in Winona County, Minnesota.

2.    Defendant JEDI financed the cost of the WTGs by obtaining a $2,574,900 loan from
Plaintiff.  The terms of this loan were set out in a Financing Agreement between Defendant JEDI and
Plaintiff dated as of April 14, 2010 (the "Financing Agreement").

3.    This lawsuit is brought against various Defendants for fraudulently inducing Plaintiff to
enter into the Financing Agreement.  This lawsuit is further brought to address Defendant JEDI's breach
of the Financing Agreement, Defendant JEDI's breach of the implied covenant of good faith and fair
dealing, other Defendants' tortious interference with the Financing Agreement, and various Defendants'
unjust enrichment of themselves at Plaintiff's expense.

## PARTIES

4.      Plaintiff Unison Co. Ltd. is a citizen of the Republic of Korea.  It is a South Korean company engaged in heavy equipment manufacturing, duly organized and existing under the laws of the Republic of Korea, with its principal place of business located at 1984, Chojeon-Ri Sanam-Myeon Sachen-Si Gyeongsangnam-Do, Korea.

5.      Defendant Juhl Energy, Inc. ("JEI"), formally known as Juhl Wind, Inc., is a citizen of the States of Delaware and Minnesota.  It is a publicly held corporation engaged in the development, operation, construction, and management of renewable energy projects, and is duly incorporated under the laws of the State of Delaware with its principal place of business located at 1502 17th St. SE, Pipestone, Minnesota 56164.

6.      Defendant Daniel Juhl is an individual who is a citizen of the State of Minnesota.  Mr. Juhl is domiciled in and is a resident of the State of Minnesota, and is the Chairman of the Board of Directors and Principal Executive Officer of Defendant JEI and the Chief Executive Officer of Defendant JEDI.

7.      Defendant John Mitola is an individual who is a citizen of the State of Minnesota.  Mr. Mitola is domiciled in and is a resident of the State of Minnesota, and is the President and a member of the Board of Directors of Defendant JEI.

8.      Defendant John Brand is an individual who is a citizen of the State of Minnesota.  Mr. Brand is domiciled in and is a resident of the State of Minnesota, and is the Chief Financial Officer of Defendant JEI.

9.      Defendant JEDI is a citizen of the State of Minnesota.  JEDI is a wholly owned and managed corporate subsidiary of Defendant JEI, duly incorporated under the laws of the State of Minnesota, with its principal place of business located at 1502 17th St. SE, Pipestone, MN 56164.

10.     Defendant Winona Wind Holdings, LLC ("WWH") is a citizen of the State of Minnesota. WWH is a limited liability company duly formed and existing under the laws of the State of Minnesota. Defendant WWH is currently wholly owned and managed by Defendant JEDI with its principal place of

business located at 1502 17th Street SE, Pipestone, MN 56164.  The sole member of Defendant WWH is Defendant JEDI.  As alleged above, Defendant JEDI is a citizen of the State of Minnesota.

11.     Defendant Winona County Wind, LLC ("WCW") is a citizen of the State of Minnesota. WCW is a limited liability company duly formed and existing under the laws of the State of Minnesota. Defendant WCW is wholly owned and managed by Defendant WWH with its principal place of business located at 1502 17th Street SE, Pipestone, MN 56164.  The sole member of Defendant WCW is Defendant WWH.  As alleged above, Defendant WWH is a citizen of the State of Minnesota.

12.     Defendant Bartly J. Loethen is an individual who is a citizen of the State of Indiana.  Mr. Loethen is domiciled in and is a resident of the State of Indiana, and is an attorney who has represented Defendants JEI, JEDI, WWH, and WCW since on or before 2010.  Mr. Loethen is also the governing person of Defendant WWH and manager of Defendant WCW.

13.     Defendant Audrey Loethen is an individual who is a citizen of the State of Indiana.  Ms. Loethen is domiciled in and is a resident of the State of Indiana, and was an original member and co-owner of Defendant WWH.  Defendant Audrey Loethen is also Defendant Bartly J. Loethen's spouse.

14.     Defendant Jeff Bendel is an individual who is a citizen of the State of Minnesota.  Mr. Bendel is domiciled in and is a resident of the State of Minnesota, is the Vice President of Construction Development of Defendant JEI, and was an original member and co-owner of Defendant WWH.

## JURISDICTION AND VENUE

15.     Jurisdiction is conferred on the Court by diversity of citizenship pursuant to 28 U.S.C. § 1332 (a)(2).  This action is between the citizen and subject of a foreign state and citizens and subjects of differing states and the amount of controversy exceeds the sum of $75,000, exclusive of interest and costs.

16.     Defendants have purposefully availed themselves of the privilege of doing business in and have had continuous and systematic general contacts with the State of Minnesota.  In addition, the causes of action alleged herein arise out of and relate to each Defendant's contacts with the State of Minnesota.

3

17.     Venue is proper in the District of Minnesota because the transactions and activities described hereinafter occurred in the State of Minnesota, the pertinent records of the transactions are maintained in the State of Minnesota, Defendant JEDI has contractually agreed that venue is appropriate in this Court, and Defendants are citizens of, reside in, have their principal place of business in, or conduct businesses within the State of Minnesota.

## FACTUAL BACKGROUND

18.     Defendant JEDI and the Winona County Economic Development Authority (the "WCEDA") executed a Development Agreement in 2008 pursuant to which Defendant JEDI agreed to develop a community wind farm for WCEDA in the County of Winona.  The WCEDA is a public body that was established by the County of Winona pursuant to the applicable provisions of Chapter 469 of the Minnesota Statutes.

19.     In early 2010, Defendant JEDI and Plaintiff began discussing the possibility of Defendant JEDI purchasing the WTGs for the Wind Farm from Plaintiff.  In those discussions, Defendants JEI and JEDI and their officers and agents, Defendants Daniel Juhl, John Brand, and John Mitola falsely represented to Plaintiff that WCEDA would remain the long-term owner and operator of the Wind Farm and that Defendant JEDI would simply fulfill the role of contractor.

20.     After these discussions were held and after reaching agreement with respect to the terms of sale, Plaintiff and Defendant JEDI entered into a Turbine Supply Agreement ("TSA") dated as of April 16, 2010, a true and correct copy of which is attached hereto as **Exhibit A**.  Pursuant to the TSA, Defendant JEDI purchased two WTGs from Plaintiff for installation on a community wind farm project in Winona County, Minnesota (the "Wind Farm").

21.     In reliance upon Defendants' representations that WCEDA would remain the long-term owner and operator of the Wind Farm, Plaintiff agreed to finance the WTG purchase price by making a loan to Defendant JEDI in the amount of $2,574,900 (the "Loan").  The terms and conditions applicable to this financing were set out in the Financing Agreement, a true and correct copy of which is attached hereto as **Exhibit B**, a Security Agreement (the "Security Agreement"), a true and correct copy of which

4

is attached hereto as **Exhibit C**, and a Secured Promissory Note (the "Note"), a true and correct copy of which is attached hereto as **Exhibit D**.  Defendant Bartly J. Loethen represented Defendant JEDI in the drafting and negotiation of these documents.

22.     At the time of the execution of the TSA, the Financing Agreement, the Security Agreement and the Note, the Wind Farm was wholly owned by Defendant WCW.  Defendant WCW, in turn, was wholly owned by the WCEDA.

23.     On or about April 30, 2010, just 11 days after the execution of the Financing Agreement, Defendant WWH was created.   Defendant Bartly J.Loethen, counsel for Defendants JEI and JEDI, was the organizer and sole governing person of WWH.  Although defendants Audrey Loethen and Jeff Bendel were the initial members and owners of Defendant WWH, 100% of WWH's ownership was immediately pledged to Defendant JEDI under a Membership Interest Pledge Agreement ("MIPA") that was dated as of April 30, 2010, for an unidentified "loan" that Defendant JEDI allegedly provided to Defendant WWH.

24.     Just over one month later, on June 1, 2010, Defendant WWH purchased the Wind Farm by acquiring full ownership of Defendant WCW from WCEDA.  Defendant Bartly J. Loethen served as the attorney for both Defendant WWH and Defendant WCW in this transaction.

25.     About three and a half months later, on October 13, 2010, Defendant JEDI purchased the Wind Farm and Defendant WCW by acquiring full ownership of Defendant WWH from Defendants Audrey Loethen and Jeff Bendel.   Defendant Bartly J. Loethen served as the attorney for both Defendant WCW and Defendant JEDI in this transaction.

26.     The transfer of ownership of the Wind Farm from WCEDA to Defendant JEDI was contrary to the representations of Defendants JEI, JEDI, Daniel Juhl, John Brand and John Mitola that WCEDA would remain the long-term owner and operator of the Wind Farm.

27.     This ownership transfer was also a breach of Section 6.6(b) of the Financing Agreement. In Section 6.6(b), Defendant JEDI agreed that it would "not enter into or become a party to any Additional Project Document" without Plaintiff's advance written consent.  The term "Additional Project Document" was defined within the Financing Agreement to mean any agreement, contract or commitment

5

"relating to the development, financing, construction, ownership, operation or maintenance" of the Wind Farm entered into by Defendant JEDI with any other person.  The agreements executed by Defendant JEDI in connection with the transfer of ownership of the Wind Farm were "Additional Project Documents."  They were executed without notice to Plaintiff and without Plaintiff's advance written consent in breach of Section 6.6(b) of the Financing Agreement.

28.     Defendants committed other illicit and improper acts in connection with the Financing Agreement and related contracts, including the following:

a.     The Security Agreement, the Note and the Financing Agreement pledged to Plaintiff a security interest in all rights arising out of a contract between Defendants JEDI and WCW by the name of the Development and Construction Services Agreement ("DCSA").  The rights to this contract, which was purported to be the primary development contract relating to the Wind Farm, was the only collateral received by Plaintiff to secure the Loan made to Defendant JEDI under the Financing Agreement.   The Security Agreement, the Note and the Financing Agreement stated that the DSCA was in existence as of the date of those documents.  In fact, Defendants JEDI and WCW did not execute the DCSA, which was signed on behalf of Defendant WCW by Defendant Bartly J. Loethen as its manger, until November 18, 2010.  Plaintiff did not know until this year that the DCSA was not executed until November 18, 2010.  If Plaintiff had known that the DCSA did not exist at the time it executed the Security Agreement, the Note, and the Financing Agreement, and it thus had no collateral to secure the Loan, it would not have executed those contracts.  Moreover, because the DCSA constituted an "Additional Project Document" under the Financing Agreement, its execution by Defendant JEDI without Plaintiff's advance written consent was in violation of Section 6.6(b) of the Financing Agreement.

b.     Defendant JEDI executed other "Additional Project Documents" without Plaintiff's prior written consent in breach of the Financing Agreement.  First, on or about April 30, 2010, the same day that Defendant Bartly J. Loethen organized Defendant WWH, Defendant JEDI entered into a transaction with Defendant WCW pursuant to which Defendant received a

$3,500,000 promissory note from Defendant WCW.  Second, on July 1, 2011, Defendants WCW and Defendant JEDI executed an Administrative Services Agreement ("ASA") that obligated WCW to pay Defendant JEDI three percent (3%) of the aggregate future gross revenue of the Wind Farm, plus reimbursement of expenses for ten (10) years, in exchange for providing "administrative services**."** Defendant Bartly J. Loethen signed the ASA on behalf of Defendant WCW as its Manager.

29.     After Plaintiff learned of the unauthorized transfer of ownership of the Wind Farm and the other illicit acts discussed above, it requested that Defendant JEDI provide certain documents and information pertaining to the Wind Farm and Defendant JEDI in accordance with the reporting requirements under Section 5.1 of the Financial Agreement.  Defendant JEDI failed to provide a significant and substantial portion of the requested documents and information.  In those same requests, Plaintiff notified Defendant JEDI of its breaches of the Financing Agreement and provided more than thirty (30) days to cure all defaults.  Defendant JEDI has failed to cure any of its defaults.

30.     On November 13, 2013, Plaintiff once again notified Defendant JEDI of its defaults under the Financing Agreement and declared the Loan immediately due and payable pursuant to Section 7.2 of the Financing Agreement.  To date, Defendant JEDI has not paid Plaintiff any portion of the $2,574,900 Loan principal, nor has it been paid any portion of the interest that has accrued on the Loan.

## COUNT ONE
## FRAUDULENT INDUCEMENT

*Against Defendants JEI, JEDI, Daniel Juhl, John Brand and John Mitola*

31.     Plaintiff hereby restates and realleges Paragraphs 1-30 of the Complaint as if fully stated herein.

32.     On February 22, 2010, and March 29, 2010, representatives of Defendant JEI, JEDI and Plaintiff conducted meetings in Minnesota and in South Korea to negotiate the terms of the Financing Agreement.  During those meetings, Defendants Daniel Juhl and John Brand represented to Al Hong and

Doo Hoon Kim, employees of Plaintiff, and to Wayne Emerick, the U.S. sales representative of Plaintiff, that WCEDA was to be the long-term owner and operator of the Wind Farm.

33.     On March 21, 2010, John Mitola represented to Plaintiff in an email addressed to Al Hong and YK Kim, employees of Plaintiff, and Wayne A. Emerick, the U.S. sales representative of Plaintiff, that WCEDA would always retain an ownership interest in the Wind Farm, that Defendant JEDI would serve in the role of developer and contractor, and that Defendant JEDI would not obtain an ownership interest in the Wind Farm.

34.     Defendants did not retract or modify any of these representations prior to the execution of the Financing Agreement.

35.     At the time Defendants made these representations and at the time Defendant JEDI and Plaintiff executed the Financing Agreement, Defendants knew that these representations were false and that the ownership of the Wind Farm would soon be transferred from WCEDA to Defendant JEDI.

36.     Defendant JEDI started down the path towards obtaining formal ownership of Wind Farm from WCEDA long before Defendant JEDI purchased Defendant WCW, and thus the Wind Farm that WCW owned, on October 13, 2010.  Defendants JEI and JEDI, through their attorney, began exercising control of WCW at least as of April 30, 2010, just eleven days after the Financing Agreement was signed. On that date, Defendant WCW delivered a $3.5 million dollar promissory note to Defendant JEDI documenting a loan that Defendant JEDI had made to Defendant WCW.  Although WCEDA was still the ostensible owner of Defendant WCW and thus the Wind Farm on April 30, 2010, the person who signed the promissory note on behalf of Defendant WCW as its manager was Defendant Bartly Loethen, the attorney for Defendants JEI and JEDI.

37.     On that same day, Defendant WWH, the entity that soon would obtain ownership of WCW and thus the Wind Farm, was created.  From the beginning, Defendant WWH was closely affiliated with and controlled by Defendants JEI and JEDI.  The organizer and sole governing person of Defendant WWH was Defendant Bartly J. Loethen, the attorney for Defendants JEI and JEDI.  One of the initial members and owners of Defendant WWH was Mr. Loethen's wife, Defendant Audrey Loethen.

8

The other initial member and owner was Defendant Jeff Bendel, Defendant JEI's Vice President of Construction Development.   Defendant JEDI's close ties to Defendant WWH from its inception were also evidenced by the execution of the MIPA on the same day that Defendant WWH was created, resulting in the immediate pledge of 100% of Defendant WWH's ownership interest to Defendant JEDI.

38.     The only apparent reason for Defendant WWH's creation was to allow Defendant JEDI to exercise more control and effective ownership of the Wind Farm.  On June 1, 2010, just a few weeks after Defendant WWH was created, Defendant WWH purchased the Wind Farm by acquiring full ownership of Defendant WCW from WCEDA.  Defendant Bartly J. Loethen, the attorney for Defendants JEI and JEDI, participated in the transaction as counsel for Defendant WWH, counsel for Defendant WCW, governing person of Defendant WWH and manager of Defendant WCW.

39.     Shortly thereafter, on October 13, 2010, Defendant JEDI completed the formal transfer of ownership of the Wind Farm that had begun months earlier.  On that day, it purchased the Wind Farm and Defendant WCW by acquiring full ownership of Defendant WWH from Defendants Audrey Loethen and Jeff Bendel.  Defendant Bartly J. Loethen served as the attorney for both Defendants JEDI and WCW in this transaction.

40.     This intricate web of transactions, beginning just days after the execution of the Financing Agreement and involving a closely knit group of individuals and a common core of entities represented by the same counsel, demonstrates that Defendants Daniel Juhl, John Brand and John Mitola all would have known at the time they made the representations to Plaintiff regarding WCEDA's continuing ownership of the Wind Farm that those representations were false.

41.     Defendants intended to induce Plaintiff to rely upon their representations and execute the Financing Agreement.  Defendants knew that WCEDA's continued ownership of the Wind Farm was critical to Plaintiff.   Plaintiff's Loan to Defendant JEDI was to be repaid as soon as WCEDA obtained either permanent debt financing of the Wind Farm or equity involvement by another company in the project.  If WCEDA sold its ownership interests in the Wind Farm, permanent debt financing and equity involvement would become far more difficult to obtain.

42.     If Plaintiff had known that the ownership of the Wind Farm was to be transferred to Defendant JEDI, it would not have executed the Financing Agreement and thus would not have made the Loan to Defendant JEDI.

43.     Plaintiff's reliance on Defendants' misrepresentations was reasonable.

44.     Defendants Daniel Juhl, John Brand and John Mitola were officers and agents of Defendants JEI and JEDI and were acting within the scope of their authority, within the course of their employment by Defendants JEI and JEDI, and for the benefit of those corporations.  Thus their knowledge and fraudulent actions are imputed to Defendants JEI and JEDI.

45.     Plaintiff has been damaged as a result of its reliance on Defendants' misrepresentations and its execution of the Finance Agreement in the amount of the debt that remains unpaid on the Loan. As of November 13, 2013, the date that Plaintiff declared the Loan immediately due and payable, the amount of the unpaid debt was $3,347,476.35.  This amount increases daily as additional interest becomes due under the terms of the Loan.

**COUNT TWO**
**BREACH OF FINANCING AGREEMENT**
**(Relating To Execution Of Subsequent Agreements)**

***Against Defendant JEDI***

46.     Plaintiff hereby restates and realleges Paragraphs 1-45 of the Complaint as if fully stated herein.

47.     Defendant JEDI breached the Financing Agreement by executing and becoming a party to: (1) the agreements pursuant to which Defendant JEDI loaned $3,500,000 to Defendant WCW on April 30, 2010; (2) the MIPA, dated April 30, 2010, and related agreements pursuant to which 100% of Defendant WWH's ownership interest was pledged to Defendant JEDI and JEDI provided a loan to WWH; (3) the agreements pursuant to which ownership interests of the Wind Farm and Defendants WCW and WWH were transferred to Defendant JEDI on October 13, 2010; (4) the DCSA, dated November 18, 2010, pursuant to which Defendant JEDI agree to undertake development of the Wind

Farm; and (5) the ASA, dated July 1, 2011, pursuant to which Defendant JEDI agreed to perform certain administrative services for the Wind Farm (collectively, the "Subsequent Agreements").

48.     Section 6.6(b) of the Financing Agreement provides that Defendant JEDI would "not enter into or become a party to any Additional Project Document" without Plaintiff's advance written consent.  The term "Additional Project Document" was defined within the Financing Agreement to mean any agreement, contract or commitment "relating to the development, financing, construction, ownership, operation or maintenance" of the Wind Farm.

49.     Each of the Subsequent Agreements is an Additional Project Document, in that each related to the development, financing, construction, ownership, operation or maintenance of the Wind Farm.

50.     Plaintiff was not notified of and did not give its advance written consent to Defendant JEDI to enter into or become a party to any of the Subsequent Agreements.

51.     There were no conditions precedent that were to be performed by Plaintiff in connection with the obligations that Defendant JEDI assumed under Section 6.6(b) of the Financing Agreement.

52.     As a direct and proximate result of Defendant JEDI's breach of Section 6.6(b) of the Financing Agreement, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

**COUNT THREE**
**BREACH OF FINANCING AGREEMENT**
**(Relating To Failure To Provide Valid Collateral)**

***Against Defendant JEDI***

53.     Plaintiff hereby restates and realleges Paragraphs 1-52 of the Complaint as if fully stated herein.

54.     Defendant JEDI breached the Financing Agreement because, contrary to Defendant JEDI's representation in the Security Agreement, the Note, and the Financing Agreement, the DCSA was not in existence at the time of the execution of those contracts.

11

55.     The Security Agreement, the Note and the Financing Agreement pledged to Plaintiff a security interest in all rights arising out of the DCSA contract between Defendants JEDI and WCW.

56.     The rights to this contract, which was purported to be the primary development contract relating to the Wind Farm, was the only collateral received by Plaintiff to secure the Loan made to Defendant JEDI under the Financing Agreement.

57.     The Security Agreement, the Note, and the Financing Agreement stated that the DSCA was in existence as of the date of those documents.

58.     In fact, Defendants JEDI and WCW did not execute the DCSA until November 18, 2010.

59.     Plaintiff did not know until this year that the DCSA was not executed until November 18, 2010.

60.     Because the DCSA was not in existence at the time that Plaintiff executed the Security Agreement, the Note, and the Financing Agreement, Plaintiff did not receive the collateral, lien and security interest that it had bargained for, in breach of Sections 3.1(g)(i), 4.13(b), 4.17 and 4.29 of the Financing Agreement.

61.     Because the DCSA was not in existence when the Financing Agreement was executed, Defendant JEDI also breached Section 4.12(a) of the Financing Agreement, which states that there are no facts or circumstances known to Defendant JEDI which: (i) could reasonably be expected to have a material adverse effect upon the Wind Farm project and which have not been disclosed to lender; or (ii) regard any rights of any person to any interest relating to the ownership, development, construction, operation or maintenance of the Wind Farm project.

62.     Because the DCSA was not in existence when the Financing Agreement was executed, Defendant JEDI also breached Section 4.12(b) of the Financing Agreement, which states that all information provided by Defendant JEDI to Plaintiff, taken as a whole, was complete and correct in all material respects and did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein not misleading as of the date provided.

12

63.     There were no conditions precedent that were to be performed by Plaintiff in connection with the obligations that Defendant JEDI assumed under Sections 3.1(g)(i), 4.13(b), 4.17, 4.29, 4.12(a) and 4.12(b) of the Financing Agreement.

64.     As a direct and proximate result of Defendant JEDI's breach of Sections 3.1(g)(i), 4.13(b), 4.17, 4.29, 4.12(a) and 4.12(b) of the Financing Agreement, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

**COUNT FOUR**
**BREACH OF FINANCING AGREEMENT**
**(Relating To Failure To Use Best Efforts To Obtain Permanent Financing)**

***Against Defendant JEDI***

65.     Plaintiff hereby restates and realleges Paragraphs 1-64 of the Complaint as if fully stated herein.

66.     Defendant JEDI breached the Financing Agreement by not using its best efforts to obtain permanent financing.

67.     Section 5.20 of the Financing Agreement states that Defendant JEDI is obligated to exercise best efforts to arrange and effect permanent financing that would enable Defendant JEDI to repay the Loan to Plaintiff.

68.     Defendant JEDI has not exercised its best efforts to arrange and effect permanent financing.  Plaintiff is not aware of any efforts that Defendant JEDI made in this regard other than inquiries that Defendant JEDI recently made to one lender.  Even this minimal effort was undertaken only after Plaintiff demanded that Defendant JEDI take additional steps to obtain permanent financing.

69.     Recently, during discussions undertaken between representatives of Defendant JEDI and Plaintiff regarding the Loan, Defendant JEDI's representatives informed Plaintiff's representatives that Defendant JEDI would only make efforts to seek permanent financing if Plaintiff agreed to reduce the amount of debt owing on the Loan by approximately fifty percent (50%).

70.     There were no conditions precedent that were to be performed by Plaintiff in connection with the obligations that Defendant JEDI assumed under Section 5.20 of the Financing Agreement.

71.     As a direct and proximate result of Defendant JEDI's breach of Section 5.20 of the Financing Agreement, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

## COUNT FIVE
## BREACH OF FINANCING AGREEMENT
## (Relating To Failure To Provide Records)

### *Against Defendant JEDI*

72.     Plaintiff hereby restates and realleges Paragraphs 1-71 of the Complaint as if fully stated herein.

73.     Defendant JEDI breached the Financing Agreement by failing to give Plaintiff accounting records and other documents relating to the Wind Farm.

74.     Section 5.1 of the Financing Agreement obligated Defendant JEDI to provide ten specified categories of documents to Plaintiff, and to also furnish other information and documents regarding the Wind Farm project which Plaintiff might reasonably request.

75.     On August 16, September 18, and October 4, 2013, Plaintiff requested that Defendant JEDI provide certain documents and information pertaining to the Wind Farm and Defendant JEDI in accordance with Section 5.1.

76.     Defendant JEDI failed to provide a significant and substantial portion of the requested documents and information.

77.     There were no conditions precedent that were to be performed by Plaintiff in connection with the obligations that Defendant JEDI assumed under Section 5.1 of the Financing Agreement.

78.     As a direct and proximate result of Defendant JEDI's breach of Section 5.1 of the Financing Agreement, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

## COUNT SIX
## BREACH OF FINANCING AGREEMENT
### (Relating To Failure To Repay Loan)

### *Against Defendant JEDI*

79.     Plaintiff hereby restates and realleges Paragraphs 1-78 of the Complaint as if fully stated herein.

80.     Each of the above-referenced contractual breaches constitutes an Event of Default under Section 7.1 of the Financing Agreement.

81.     As a result of these Events of Default, Plaintiff declared the Loan and all accrued interest on the Loan and all other amounts payable under the Financing Agreement immediately due and payable under Section 7.2(a) of the Financing Agreement.

82.     Defendant JEDI has not repaid any amount due under the Loan or other amounts payable under the Financing Agreement.

83.     There were no conditions precedent that were to be performed by Plaintiff in connection with Defendant JEDI's obligation to repay the Loan, all accrued interest on the Loan, and all other amounts payable under the Financing Agreement.

84.     As a direct and proximate result of Defendant JEDI's breach of the Financing Agreement, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

## COUNT SEVEN
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Relating To Defendant JEDI'S Breach Of Contracts)

### *Against Defendant JEDI*

85.     Plaintiff hereby restates and realleges Paragraphs 1-84 of the Complaint as if fully stated herein.

86.     Defendant JEDI breached the implied covenant of good faith and fair dealing associated with the Financing Agreement in breaching the Financing Agreement as alleged herein.

87.     As a direct and proximate result of Defendant JEDI's breach of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

### COUNT EIGHT
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
### (Relating To Bartly J. Loethen's Inducement of Defendant JEDI'S Breach Of Contracts)

*Against Defendant Bartly J. Loethen*

88.     Plaintiff hereby restates and realleges Paragraphs 1-87 of the Complaint as if fully stated herein.

89.     Defendant Bartly J. Loethen knew of the Financing Agreement and its various terms and conditions.  He participated in the drafting and negotiation of that contract.

90.     Defendant Bartly J. Loethen intentionally procured Defendant JEDI's breaches of the Financing Agreement as described above by drafting documents associated with, negotiating the terms of, and advising Defendant JEDI and other Defendants with respect to the organization and management of Defendant WWH, Defendant WWH's purchase of Defendant WCW, Defendant JEDI's purchase of WWH and the Wind Farm, the DSCA, Defendant JEDI's $3,500,000 loan to Defendant WCW, the ASA , and the MIPA and documents relating to the MIPA.  In addition, Defendant Bartly J. Loethen actively participated in Defendant JEDI's breaches of the Financing Agreement as the governing person of Defendant WWH and manager of Defendant WCW.

91.     Defendant Bartly J. Loethen had no justification for these actions.

92.     As a direct and proximate result of Defendant Bartly J. Loethen's intentional procurement of Defendant JEDI's breaches of the Financing Agreement as described above, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

**COUNT NINE**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**
**(Relating To Audrey Loethen's and Jeff Bendel's Inducement of Defendant JEDI'S Breach Of Contracts)**

*Against Defendants Audrey Loethen and Jeff Bendel*

93.     Plaintiff hereby restates and realleges Paragraphs 1-92 of the Complaint as if fully stated herein.

94.     Defendants Audrey Loethen and Jeff Bendel knew of the Financing Agreement and its various terms and conditions.  Defendant Audrey Loethen was Defendant Bartly J. Loethen's wife. Defendant Jeff Bendel was a Vice President of Defendant JEI.

95.     Defendants Audrey Loethen and Jeff Bendel intentionally procured Defendant JEDI's breaches of the Financing Agreement as described above by participating in and being parties to the agreements associated with the organization of Defendant WWH, Defendant WWH's purchase of Defendant WCW, Defendant JEDI's purchase of WWH and the Wind Farm, the MIPA and documents relating to the MIPA.

96.     Defendants Audrey Loethen and Jeff Bendel had no justification for these actions.

97.     As a direct and proximate result of Defendants Audrey Loethen's and Jeff Bendel's intentional procurement of Defendant JEDI's breaches of the Financing Agreement as described above, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

**COUNT NINE**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**
**(Relating To WCW's Inducement of Defendant JEDI'S Breach Of Contracts)**

*Against Defendant WCW*

98.     Plaintiff hereby restates and realleges Paragraphs 1-97 of the Complaint as if fully stated herein.

99.     Defendant WCW and its officers and agents knew of the Financing Agreement and its various terms and conditions.  Defendant Bartly J. Loethen, the person who drafted and negotiated the Financing Agreement, was Defendant WCW's manager at least as early as April 30, 2010.  Defendant

WWH became the owner of Defendant WCW on June 1, 2010.  Defendant JEDI controlled and exercised ownership of Defendant WCW through WWH.   The knowledge and actions of Defendants Bartly J. Loethen, WWH, JEI, JEDI, Audrey Loethen and Jeff Bendel should be imputed to Defendant WCW.

100.    Defendant WCW intentionally procured Defendant JEDI's breaches of the Financing Agreement as described above by participating in and being a party to Defendant WWH's purchase of Defendant WCW, the DSCA, Defendant JEDI's $3,500,000 loan to Defendant WCW, and the ASA.

101.    Defendant WCW had no justification for these actions.

102.    As a direct and proximate result of Defendant WCW's intentional procurement of Defendant JEDI's breaches of the Financing Agreement as described above, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

### COUNT TEN
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
### (Relating To WWH's Inducement of Defendant JEDI'S Breach Of Contracts)

### *Against Defendant WWH*

103.    Plaintiff hereby restates and realleges Paragraphs 1-102 of the Complaint as if fully stated herein.

104.    Defendant WWH and its officers and agents knew of the Financing Agreement and its various terms and conditions.  From its inception, Defendant JEDI and its officers and agents, all of whom knew of the Financing Agreement and its various terms and conditions, controlled and effectively exercised ownership of Defendant WWH.  Defendant Bartly J. Loethen, the person who drafted and negotiated the Financing Agreement, was Defendant WWH's governing person.  The knowledge and actions of Defendants JEDI, its officers and agents, Bartly J. Loethen, Audrey Loethen and Jeff Bendel should be imputed to Defendant WWH.

105.    Defendant WWH intentionally procured Defendant JEDI's breaches of the Financing Agreement as described above by participating in and being parties to the agreements associated with Defendant WWH's purchase of Defendant WCW and Defendant JEDI's purchase of WWH.

106.    Defendant WWH had no justification for these actions.

107.    As a direct and proximate result of Defendant WWH's intentional procurement of Defendant JEDI's breaches of the Financing Agreement as described above, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

**COUNT ELEVEN**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**
**(Relating To JEI's Inducement of Defendant JEDI'S Breach Of Contracts)**

***Against Defendant JEI***

108.    Plaintiff hereby restates and realleges Paragraphs 1-107 of the Complaint as if fully stated herein.

109.    Defendant JEI and its officers and agents knew of the Financing Agreement and its various terms and conditions.  Defendant Daniel Juhl, the Chief Executive Officer of Defendant JEDI was also the Chairman of the Board of Directors and Principal Executive Officer of Defendant JEI.  Mr. Juhl participated in the negotiation of the Financing Agreement.  In addition, Defendant Bartly J. Loethen, the person who drafted and negotiated the Financing Agreement, was also the attorney for Defendant JEI.

110.    Defendant JEI intentionally procured Defendant JEDI's breaches of the Financing Agreement as described above by directing and permitting Defendants to participate in the organization of Defendant WWH, Defendant WWH's purchase of Defendant WCW, Defendant JEDI's purchase of WWH and the Wind Farm, the DSCA, Defendant JEDI's $3,500,000 loan to Defendant WCW, the ASA , the MIPA and documents relating to the MIPA.

111.    Defendant JEI had no justification for these actions.

112.    As a direct and proximate result of Defendant JEI's intentional procurement of Defendant JEDI's breaches of the Financing Agreement as described above, Plaintiff has been damaged in an amount in excess of $75,000, to be proven with specificity at trial.

**COUNT TWELVE**
**UNJUST ENRICHMENT**

***Against Defendant Bartly J. Loethen***

113.     Plaintiff hereby restates and realleges Paragraphs 1-112 of the Complaint as if fully stated herein.

114.     Defendant Bartly J. Loethen has unjustly benefitted and knowingly received value from the illicit acts described above.  He has received payment for the legal services provided to Defendants with respect to the transactions described in this Complaint.

115.     Plaintiff has incurred the majority of expenses relating to the Wind Farm project and has not been paid *any* portion of the Loan, interest accrued on the Loan or any other amounts owing to Plaintiff under the Financing Agreement.

116.     Defendant Bartly J. Loethen's retention of the value it has received from its inducement of Defendant JEDI's breaches of contract would be inequitable.

**COUNT THIRTEEN**
**UNJUST ENRICHMENT**

***Against Defendants Audrey Loethen and Jeff Bendel***

117.     Plaintiff hereby restates and realleges Paragraphs 1-116 of the Complaint as if fully stated herein.

118.     Defendants Audrey Loethen and Jeff Bendel have unjustly benefitted and knowingly received value from the illicit acts described above.  Plaintiff is informed and believes that they were compensated for their assistance in the organization of Defendant WWH, Defendant WWH's purchase of Defendant WCW, Defendant JEDI's purchase of Defendant WWH, and the transactions involving the MIPA and related agreements.

119.     Plaintiff has incurred the majority of expenses relating to the Wind Farm project and has not been paid *any* portion of the Loan, interest accrued on the Loan or any other amounts owing to Plaintiff under the Financing Agreement.

120.     Defendants Audrey Loethen's and Jeff Bendel's retention of the value they have received from their inducement of Defendant JEDI's breaches of contract would be inequitable.

**COUNT FOURTEEN**
**UNJUST ENRICHMENT**

*Against Defendant WCW*

121.     Plaintiff hereby restates and realleges Paragraphs 1-120 of the Complaint as if fully stated herein.

122.     Defendant WCW has unjustly benefitted and knowingly received value from the illicit acts described above.  It has received value for its ownership of the Wind Farm and the operation of the two WTGs supplied and financed by Plaintiff.

123.     Plaintiff has incurred the majority of expenses relating to the Wind Farm project and has not been paid *any* portion of the Loan, interest accrued on the Loan or any other amounts owing to Plaintiff under the Financing Agreement.

124.     Defendant WCW's retention of the value it has received from its inducement of Defendant JEDI's breaches of contract would be inequitable.

**COUNT FIFTEEN**
**UNJUST ENRICHMENT**

*Against Defendant WWH*

125.     Plaintiff hereby restates and realleges Paragraphs 1-124 of the Complaint as if fully stated herein.

126.     Defendant WWH has unjustly benefitted and knowingly received value from the illicit acts described above.  It has received value for its ownership of the Wind Farm and the operation of the two WTGs supplied and financed by Plaintiff.

127.     Plaintiff has incurred the majority of expenses relating to the Wind Farm project and has not been paid *any* portion of the Loan, interest accrued on the Loan or any other amounts owing to Plaintiff under the Financing Agreement.

128.     Defendant WWH's retention of the value it has received from its inducement of Defendant JEDI's breaches of contract would be inequitable.

## COUNT SIXTEEN
## UNJUST ENRICHMENT

### *Against Defendant JEI*

129.     Plaintiff hereby restates and realleges Paragraphs 1-128 of the Complaint as if fully stated herein.

130.     Defendant JEI has unjustly benefitted and knowingly received value from the illicit acquisition of the Wind Farm by its subsidiary, Defendant JEDI.  Defendant JEI lists the Wind Farm as an asset in its SEC filings, significantly contributing to its stock value.  JEI has also unjustly benefitted indirectly through the increased value of its subsidiary JEDI, contributed to by the ownership of the fully developed and constructed Wind Farm.

131.     Plaintiff has incurred the majority of expenses relating to the Wind Farm project and has not been paid *any* portion of the Loan, interest accrued on the Loan or any other amounts owing to Plaintiff under the Financing Agreement.

132.     Defendant JEI's retention of the value it has received from the illicit acquisition of the Wind Farm by its subsidiary, Defendant JEDI and from its inducement of Defendant JEDI's breaches of contract would be inequitable.

## PRAYER FOR RELIEF

**WHEREFORE,** based on the aforementioned facts and allegations, Plaintiff prays for judgment as follows:

1.     Awarding Plaintiff monetary damages against Defendants in an amount in excess of $75,000, together with pre-judgment and post-judgment interest as may be allowable by law;

2.     Awarding Plaintiff the amounts by which Defendants have been unjustly enriched;

3.     Awarding Plaintiff its attorneys' fees, costs and disbursements as available by law or in equity; and

4.      Award Plaintiff such other and further relief as the Court deems just and equitable.

**JURY TRIAL DEMAND**

Plaintiff Unison Co., Ltd. demands a trial by jury on all counts so triable.


Dated:  December 5, 2013                          s/ Paul R. Dieseth
                                                  _____
                                                  Paul R. Dieseth (#166881)
                                                  Katherine Arnold (#395767)
                                                  DORSEY & WHITNEY LLP
                                                  50 South Sixth Street, Suite 1500
                                                  Minneapolis, MN 55402
                                                  Telephone: 612-340-2600
                                                  Facsimile:  612-340-2868

                                                  **ATTORNEYS FOR PLAINTIFF**
                                                  **UNISON CO., LTD.**