EUNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Unison Co., Ltd.,

        Plaintiff,         **MEMORANDUM OPINION AND ORDER**

v.        Civil No. 13-3342 ADM/BRT

Juhl Energy Development, Inc., Juhl Energy, Inc.,
Winona Wind Holdings, LLC, Winona County Wind,
LLC, Daniel Juhl, John Mitola, John Brand, Bartly J.
Loethen, Audrey Loethen, and Jeff Bendel,

        Defendants.
_____

Boyoon Choi, Esq., Choi Capital Law PLLC, Seattle, WA, on behalf of Plaintiff.

J. Matthew Berner, Esq., Droel PLLC, Bloomington, MN, on behalf of Defendants.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiff Unison Co., Ltd.'s ("Unison") Motion to Modify and Correct the Arbitration Award [Docket No. 181], Defendants Juhl Energy Development, Inc., Juhl Energy, Inc., Winona Wind Holdings, LLC, Winona County Wind, LLC, Daniel Juhl, John Mitola, John Brand, Bartly J. Loethen, Audrey Loethen, and Jeff Bendel's (collectively, "Defendants") Motion to Confirm Arbitration Award and Dismiss Plaintiff's Amended Complaint with Prejudice [Docket No. 211], and Defendants' Motion for Attorneys' Fees and Costs [Docket No. 214]. For the reasons set forth below, Unison's Motion is denied, Defendants' Motion to Confirm Arbitration Award and Dismiss Plaintiff's Amended Complaint with Prejudice is granted, and Defendants' Motion for Attorneys' Fees and Costs is denied.

## II. BACKGROUND

Juhl Energy Development, Inc. ("JEDI") and Unison are parties to contractual agreements related to the design, manufacture, and sale of Wind Turbine Generators ("WTG") that were to be installed at a community wind farm project in Winona County, Minnesota. Am. Compl. [Docket No. 14] ¶¶ 1, 18-22. In its December 17, 2013 Amended Complaint, Unison alleged 16 claims which largely arose from an April 14, 2010 Financing Agreement. Id. ¶¶ 31–132.

On May 26, 2015, the Eighth Circuit ordered that Unison's claims be arbitrated. Unison Co., Ltd. v. Juhl Energy Dev., Inc., 789 F.3d 816, 821 (8th Cir. 2015). This case was stayed pending the arbitration.[1] Order [Docket No. 101].

Both Unison and JEDI submitted claims and defenses in arbitration. Unison claimed that JEDI fraudulently changed its ownership structure without Unison's consent. Berner Aff. [Docket No. 194] Ex. S ("Final Award") at 5. JEDI claimed that it was defrauded because the WTGs Unison sold lacked an essential cold weather package for the production of wind power in Minnesota. Id. at 4. Arbitration hearings were held in July 2017 and January 2018. Id.

On March 26, 2018, the arbitrators (the "Panel") issued a Final Award. Id. The Panel concluded "that neither party had proven any of the claims that they asserted." Id. at 6. The Panel further found that "both Unison and JEDI thought that the WTGs were suitable for use on the Winona Project, and neither party exercised sufficient and reasonable diligence to confirm such belief." Id. Because the parties were "mutually mistaken . . . that the WTGs were suitable

---

[1] Although only Unison and JEDI were parties to the contracts with the arbitration clause, the parties conceded that claims against all named defendants should be submitted to arbitration so all of the claims could be heard in a single forum. See Unison, 789 F.3d at 817 n.1.

for use on the Winona Project, the Panel has concluded that the most appropriate and equitable remedy for both parties is the rescission of all of the contracts between the parties." Id.

Unison was responsible for dismantling the WTGs. Id. at 6–7. If Unison declined to remove the WTGs, it was ordered to pay JEDI $350,000 to cover JEDI's cost of decommissioning. Id. Further, "[i]n order to more nearly place the parties in the position they were in prior to the rescinded contracts," Unison was ordered to pay JEDI $285,000 for construction and related costs, plus $76,000 for additional freight costs resulting from packaging problems caused by Unison. Id. at 7. Those costs were subject to 5% interest from December 5, 2013 to May 15, 2018, for a total amount of $442,720. Id. Thus, if Unison elected to dismantle the WTGs, it was ordered to pay JEDI $442,720. If Unison declined to dismantle the WTGs, it was ordered to pay JEDI $792,720.

On March 27, 2018, Defendants moved to Confirm the Arbitration Award and Dismiss Plaintiffs' Amended Complaint [Docket No. 130], and on May 7, 2018, Defendants moved for Attorneys' Fees and Costs [Docket No. 148]. The Motions were denied as premature since Unison had declared its intention to challenge the arbitration award under § 12 of the Federal Arbitration Act ("FAA"), which provides that any party may move to vacate, modify, or correct an arbitration award within 90 days of the initial arbitration award. See Order [Docket No. 178].

On June 22, 2018, Unison filed its Motion to Modify and Correct the Arbitration Award [Docket No. 181]. Unison raises two arguments in support of its Motion. First, Unison contends that the Final Award should be modified because it disproportionally places the financial burden on Unison, which is contrary to the Panel's equitable decision in rescinding the contracts. Second, Unison asserts that the Final Award should be vacated because the Panel exceeded its

3

power by granting an award outside the scope of the parties' contractual agreements.

On June 28, 2018, Defendants filed its Response [Docket No. 192] to Unison's Motion. Defendants argue that Unison's Motion should be denied because it failed to first seek the same relief from the Panel. Defendants also argue that Unison arguments in support of modifying or vacating the Final Award lack merit.

On July 2, 2018, Defendants renewed their Motions to Confirm the Arbitration Award and for Attorneys' Fees and Costs.

## III. DISCUSSION

**A. Motion to Modify and Correct the Arbitration Award**

Unison argues that the Final Award should either be vacated under § 10 or modified under § 11 of the FAA. Defendants respond that a party seeking to vacate, modify, or correct an arbitration award must first seek such relief from the arbitrators before filing a motion in district court. Since Unison failed to do so, Defendants contend that Unison's arguments challenging the Final Award have been waived. Defendants also challenge Unison's arguments on the merits, asserting that none of Unison's contentions constitute cognizable grounds for vacating or modifying the Final Award.

The FAA provides for judicial review to confirm, vacate, or modify arbitration awards. Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008). Vacateur of an arbitration award is governed by § 10 of the FAA, which "authorizes a district court to vacate an arbitration award" under the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators,

> or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Med. Shoppe Int'l, Inc. v. Turner Invs., 614 F.3d 485, 488 (8th Cir. 2010) (quoting 9 U.S.C. § 10). Modification of an arbitration award is governed by § 11 of the FAA, which authorizes a district court to modify or correct an arbitration award under any of the following circumstances:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

"When reviewing an arbitral award, courts accord an extraordinary level of deference to the underlying award itself." Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793, 798 (8th Cir. 2004). "Courts have no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors or on a misinterpretation of the underlying contract." Med. Shoppe Int'l, 614 F.3d at 488. "The bottom line is we will confirm the arbitrator's award even if we are convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the

scope of his authority." McGrann v. First Albany Corp., 424 F.3d 743, 748 (8th Cir. 2005) (quotation, alteration, and citation omitted).

Defendants allege that a party seeking to vacate or modify an arbitration award must first seek relief from the arbitrators before filing a motion in district court. However, the authority cited by Defendants does not directly support this contention. Rather, the cited authority states that "a party cannot refuse to participate in arbitration or fail in arbitration to raise a particular argument concerning the merits of the grievance and later seek judicial resolution of that same issue." Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp., 380 F.3d 1084, 1101 (8th Cir. 2004). This does not stand for the proposition that Unison is barred from raising any arguments challenging the Final Award under §§ 10 and 11 of the FAA in district court unless these arguments were first raised to the Panel.[2] Therefore, Unison's arguments will be addressed.

**1. Restoring to Pre-Contract Position**

In its Final Award, the Panel determined that Unison and Defendants were mutually mistaken on the suitability of the WTGs for the proposed wind project. As a result, the Panel "concluded that the most appropriate and equitable remedy for both parties is rescission of all of the contracts between the parties." Final Award at 6. The Final Award, Unison argues, does not reflect the Panel's intent of equitable relief because it awarded JEDI construction, installation, freight, and decommissioning costs at the sole expense of Unison. Thus, Unison contends that

---

[2] Defendants also summarily assert that Unison has waived its challenges to the Final Award because it has paid Defendants $792,720, the amount the Panel ordered Unison to pay if it declined to perform decommissioning. Defendants have not supplied legal authority to support this assertion.

the Final Award leaves it in a more detrimental position than it was prior to the rescinded contracts. This result is contrary to the Final Award's expressed intent to place the parties in the positions they were before the contracts were executed. Unison's challenge is aimed at how the Panel elected to most closely restore the parties to the "position they would have been had the contract[s] never existed." Johnny's, Inc. v. Njaka, 450 N.W.2d 166, 168 (Minn. Ct. App. 1990).

The Court declines to modify the manner in which the Panel elected to restore the parties to their pre-contract positions. Rescission requires that a party be placed "as nearly as possible in his situation before the contract." Beck v. Spindler, 99 N.W.2d 684, 685 (Minn. 1959). The Panel explicitly endeavored to accomplish this by requiring Unison to cover certain costs that were designed to "more nearly place the parties in the position they were in prior to the rescinded contracts." Final Award at 7. Although the Panel chose not to offer an explanation of how ordering Unison to cover certain costs would accomplish that goal, "[a]rbitrators are not required to elaborate their reasoning supporting an award, . . . and to allow a court to conclude that it may substitute its own judgment for the arbitrator's whenever the arbitrator chooses not to explain the award would improperly subvert the proper function of the arbitral process." Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 750 (8th Cir. 1986). How the Panel elected to restore the parties to their pre-contract positions is to be treated with great deference, and Unison has not demonstrated a persuasive reason to modify the judgment of the Panel. Unison's § 11 challenge is denied.

### 2. The Panel Exceeded its Authority

Unison next makes two arguments that the Final Award should be vacated under §10 of the FAA because the Panel exceeded its authority. First, Unison asserts that the Panel's Final

7

Award of $792,720 exceeds the contracts' limitation of liability provisions, which caps damages at 10% of the $2.57 million purchase price, or $257,000. Second, Unison contends that the Panel acted beyond its authority by ordering rescission, which is not one of the sole and exclusive remedies set forth in the contracts and was not a type of relief requested by any party.

### a. Limitation of Liability Provision

Unison argues that the Final Award must be vacated because the amount of money Unison was ordered to pay Defendants exceeds the limitation of liability provisions found in the contracts. Article 9.2 of the Turbine Supply Agreement ("TSA") provides

> in no event shall UNISON . . . be liable . . . to [Defendants] . . . for any damages, claims, demands, suits, causes of action, losses, costs, expenses, and/or liabilities in connection with or arising out of this Agreement . . . in excess of ten percent (10%) of the Contract Price, regardless of whether such liability arises out of breach of contract, guarantee or warranty, tort, product liability, indemnity, contribution, strict liability, or any other legal theory.

Choi Decl. [Docket No. 184] Ex. B at Art. 9.2.[3]

There are two main flaws with Unison's argument. First, unlike Unison's other arguments, this could have been presented to the arbitrators. In its arbitration brief, Defendants claimed they were "entitled to recover all of their damages approximating $6,000,000.00 including attorneys' fees and costs incurred as a result of Unison's fraud." Berner Aff. Ex. N. This is an argument concerning the merits of the grievance that Unison cannot raise for the first time in district court. Int'l Bhd. of Elec. Workers, 380 F.3d at 1101. Additionally, Unison failed to raise this argument in its opening brief in district court. "As a general rule, we will not

---

[3] Other contracts at issue in this dispute include similar language. See Choi Decl. Ex. C at Art. 22.5.

consider arguments raised for the first time in a reply brief." Barham v. Reliance Standard Life Ins. Co., 441 F.3d 581, 584 (8th Cir. 2006) (quoting Akeyo v. O'Hanlon, 75 F.3d 370, 374 n.2 (8th Cir. 1996)).

Second, since the contracts were rescinded, the limitation of liability provision does not restrict how the parties are to be restored to their pre-contract positions. "Rescission is the unmaking of a contract, which not only terminates the contract but abrogates it and undoes it from the beginning." Johnny's, 450 N.W.2d at 168. "The effect of the remedy of rescission is generally to so extinguish a rescinded contract so effectively that in contemplation of law it has never had existence." Mead v. Mead, 974 F.2d 990, 992 (8th Cir. 1992).

Since the effect of rescission is the complete undoing of the contracts, in restoring the parties to their pre-contract positions, the Panel's determination on how to accomplish that result is not constrained by any contractual provision.

### b. Sole and Exclusive Remedy

Unison also asserts that the Final Award should be vacated because the Panel exceeded its authority. Unison appears to make two arguments in support of this assertion. The first argument is based upon similar provisions found in the contracts at issue. For example, Article 18.18 of the TSA provides

> The remedies of the Parties are exclusively set out in this Agreement and are in lieu of any other remedies available at law or in equity and without regard to the theory or cause of action upon which any claims, damages or losses might be based.

Choi Decl Ex. B. The thrust of this argument is that since rescission is not listed as a remedy in the TSA, the Panel's decision to rescind the contracts conflicts with the contractual language and must therefore be set aside.

9

This raises an issue of contract interpretation; whether the arbitrators exercised their authority according to or in violation of the contracts subject to arbitration. "Contract interpretation is left to the arbitrator." Inter-City Gas Corp. v. Boise Cascade Corp., 845 F.2d 184, 187 (8th Cir. 1988). The United States Supreme Court has made clear that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987). A reviewing court is not empowered "to set aside the arbitrator's award even though [the court] might have interpreted the contract differently." Inter-City Gas, 845 F.2d at 187.

The parties' Warranty, Maintenance & Service Agreement ("WMSA") arguably grants the Panel contractual authority to rescind the contracts. The WMSA provides that in the event one party breaches any representation or warranty it made, the other party shall, in addition to terminating the agreement, "have all other rights and remedies to which it is entitled at law or in equity." Choi Decl. Ex. C at Art. 20.1. Defendants accused Unison of fraud, essentially arguing that Unison made warranties concerning the WTGs that Unison knew the WTGs could not meet. See Berner Aff. Ex. P [Docket No. 207] at 1–2 ("Unison made the following express warranties concerning the WTG's to JEDI . . . . At the time it made these warranties, Unison knew the WTGs did not - and could not - meet them."). Since Article 20.1 of the WMSA arguably grants the Panel the contractual authority to rescind the contracts, Unison's argument fails. See Med. Shoppe Int'l, 614 F.3d at 488 ("The bottom line is we will confirm the arbitrator's award even if we are convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting with the scope of his authority.").

Unison's second argument more broadly contends that the Panel exceeded its authority by deciding the case with a remedy not requested by the parties. Contrary to Unison's assertion, in its initial position paper submitted to the Panel, Defendants claimed that "the principal remedy sought by JEDI and [Defendant Winona County Wind, LLC] in this arbitration is to rescind the TSA and WMSA as well as the parties' ancillary agreements relative to financing this transaction." Berner Aff. Ex. T [Docket No. 209] at 9. Moreover, as recognized in the Final Award, arbitrators have the power and the authority to grant equitable relief even if it is not sought by the parties. The arbitration clause in the parties' agreements are broad in scope. The WMSA, for example, authorizes arbitrators to decide "All claims, disputes or other controversies arising out of, or relating to, [the WMSA]." Choi Decl. Ex. C at Art. 21.1, 21.2. Similarly, the TSA authorizes the arbitrators to resolve "any dispute." Choi Decl Ex. B at Art. 16.1, 16.2. Such a broad grant of authority is sufficient to affirm the authority of the Panel. See David Co. v. Jim W. Miller Const., Inc., 444 N.W.2d 836, 842 (Minn. 1989) (upholding arbitrators' authority on the basis of the scope of the arbitration clause).

### 3. Conclusion

Unison's challenges to the Final Award under §§ 10 and 11 of the FAA are denied. Accordingly, Defendants' Motion to Confirm the Arbitration Award is granted. See Hall Street, 552 U.S. at 587 ("On application for an order confirming the arbitration award, the court 'must grant' the order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA].").

### B. Motion for Attorneys' Fees

Defendants request an award of attorneys' fees and costs totaling over $2 million.

11

Defendants first sought their attorneys' fees and costs in arbitration, but the Panel denied the request. Defendants now renew their request here, arguing that since they were the prevailing party in the arbitration, they are entitled to an award of attorneys' fees and costs.

Defendants' Motion is denied for two reasons. First, it is unclear Defendants are the prevailing parties. The Minnesota Supreme Court has explained that the "prevailing party in any action is one in whose favor the decision or verdict is rendered and judgment entered." Borchert v. Maloney, 581 N.W.2d 838, 840 (Minn. 1998). The Panel denied all claims brought by Unison and Defendants, concluding that both parties were "mutually mistaken" about the suitability of the WTGs for the Winona Project. Final Award at 6. While the Panel ultimately ordered Unison to cover decommissioning costs and to compensate Defendants for construction and related costs, this was done "to more nearly place the parties in the position they were in prior to the rescinded contracts," not because Defendants prevailed on any of their claims. Id. at 7.

Second, this case has only been minimally litigated in district court. The vast majority of the hours incurred in litigating this matter have been spent in arbitration. The Panel's refusal to award Defendants' its attorneys' fees is credible evidence that an award of attorneys' fees is unwarranted. This conclusion is underscored by the methodology for awarding attorneys' fees—the lodestar, "which is the product of a reasonable hourly rate and the number of hours reasonably expended on the matter." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Since the parties only minimally litigated in this forum, the Court would have to engage in guesswork and speculation on whether the amount of hours incurred in arbitration was reasonable. In reviewing attorneys' fee awards made by district courts, the Eighth Circuit gives deference to the lower court because "[t]he district court was in the best position to assess the work done by counsel."

Corbett v. Sullivan, 353 F.3d 628, 630 (8th Cir. 2003). That reasoning applies analogously here. The Panel was in the best position to assess the work done by counsel, and its decision that the parties were responsible for their own attorneys' fees will not be disturbed.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Unison Co., Ltd.'s Motion to Modify and Correct AAA Award [Docket No. 181] is **DENIED**;

2. Defendants Juhl Energy Development, Inc., Juhl Energy, Inc., Winona Wind Holdings, LLC, Winona County Wind, LLC, Daniel Juhl, John Mitola, John Brand, Bartly J. Loethen, Audrey Loethen, and Jeff Bendel's Motion to Confirm Arbitration Award and Motion to Dismiss [Docket No. 211] is **GRANTED**; and

3. Defendants' Motion for Attorney Fees and Costs [Docket No. 214] is **DENIED**.

4. The Amended Complaint [Docket No. 14] is **DISMISSED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: September 17, 2018.